IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 19, 2003

## STATE OF TENNESSEE v. ALBERT G. GASSAWAY

**Direct Appeal from the Circuit Court for Stewart County**
**No. 4-1310-CR-00     Robert E. Burch, Judge**

---

**No. M2002-02121-CCA-R3-CD - Filed November 13, 2003**

---

The defendant, Albert G. Gassaway, appeals his conviction for DUI, second offense. The trial court sentenced the defendant to eleven months, twenty-nine days, with six months to be served in the county workhouse and the remainder on probation, ordered him to pay a $600 fine, and suspended his driving privileges for two years. The defendant appeals, arguing that the evidence was insufficient to support his conviction for DUI, second offense, and that the court erred in imposing more than the minimum sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

William B. Lockert, III, District Public Defender; and Haylee Bradley, Assistant District Public Defender, for the appellant, Albert G. Gassaway.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On May 22, 2000, between the hours of 8:00 and 9:30 a.m., the defendant was driving his pickup truck on Highway 233 near Cumberland City when the truck drifted across the road, struck an embankment, went slightly airborne, struck a metal gate, and traveled across a gravel and a grassy area before becoming lodged between two trees, the truck going approximately 125 yards after leaving the pavement. A subsequent inspection of the defendant's truck revealed several opened and fifteen to twenty unopened containers of alcohol and beer.

At the trial, Dale Welker, an employee of the United States Wildlife Service, testified that he responded to the scene of the defendant's accident. Upon his arrival, he observed the defendant, staggering and with blood on his face, walking down the highway approximately fifty feet from the wreck. Welker put the uncooperative defendant inside his truck to prevent him from hurting himself until the ambulance arrived. He said that the defendant did not complain of a head injury or back pain and appeared to have only a small cut on his head. Welker further testified that the defendant "was reeking of beer smell" and appeared to be intoxicated, although he did not appear confused. He noticed that the defendant's clothes were dry, and it did not appear that the defendant had spilled anything on himself. He also testified that the defendant's speech was "somewhat slurred," but he did not administer a field sobriety test to the defendant because that was not part of his duties.

Joe Campbell, who was working as a paramedic with the Stewart County Ambulance Service, responded to a call regarding the defendant's accident. When he arrived, he noticed the defendant had some scratches and bleeding on his face. The defendant was uncooperative and agitated during Campbell's examination of him. The defendant complained of low back pain. On cross-examination, Campbell stated that a person with a severe head injury may become confused or combative and that a broken back may affect the ability to walk. These characteristics, according to Campbell, could also indicate that an individual was intoxicated. He did not recall smelling any alcohol on the defendant's breath.

Chief Deputy Derek White testified that, upon arriving on the scene, he approached the ambulance and spoke with the defendant for approximately ten minutes. The defendant said that he had fallen asleep but did not claim that his steering mechanism had become disabled. White noticed the defendant had a very strong odor of alcohol, his speech was slightly slurred, and he was very agitated and argumentative. White did not administer a field sobriety test because the defendant, who appeared to be injured, was already in the back of the ambulance, and he did not want to interfere with the defendant's medical treatment. White observed several opened and unopened beer cans inside the defendant's truck and beside the passenger's side door on the ground.

Trooper Brett Bumpus of the Tennessee Highway Patrol testified that he had completed training in the areas of accident reconstruction and DUI investigation and was also a DUI instructor for other state troopers. He determined that the defendant's truck was traveling in the westbound lane when it drifted off the roadway, struck a ditch line embankment, went slightly airborne, struck a gate, and traveled across a gravel area into a grassy area and then into a wooded line. The truck traveled some 125 yards after it left the roadway. The weather that day was clear and sunny, and the road was dry on the straight section of the highway where the accident occurred. Bumpus related that there were no brake marks on the highway or evasive action that would have caused the vehicle to leave the highway and keep on going. The absence of these marks, Bumpus concluded, indicated that the driver of the vehicle was either asleep or intoxicated.

As for the defendant's vehicle, Bumpus did not notice any apparent mechanical defects, although he admitted he did not check the steering system or fluid. He found several opened and

fifteen to twenty unopened containers of alcohol and beer inside the defendant's truck. He stated that the cabin of the truck smelled of beer but acknowledged that the smell could have come from the opened beer cans, noting, however, there was no evidence that beer had been spilled in the cab of the truck. Bumpus agreed it was "possible" that the impact of the wreck could have punctured some of the beer cans, causing them to spill in the cab of the truck.

Bumpus interviewed the defendant who admitted that he had drunk one beer. Other indications that the defendant had been drinking included his bloodshot eyes, slurred speech, and the odor of alcohol on his breath. When Bumpus leaned over the gurney to speak with the defendant at the hospital, and was about eight inches from his face, he smelled alcohol coming from the defendant's breath. He was "sure" that the alcohol odor was coming from the defendant's breath and not his clothes because he specifically looked for, but did not find, any indication that the defendant had spilled alcohol on his clothing. The defendant refused to take a blood-alcohol test. Bumpus said that the defendant was combative, verbally abusive, and uncooperative with him and the hospital staff. Bumpus testified that, based on his training and experience, the defendant was intoxicated.

Testifying as the first witness for the defense, the defendant said that on the day of the accident, his friend, John Manners, visited at his home until about 7:00 a.m. and, about an hour later, he left for work. While the defendant was driving to work, his truck "grabbed," causing him to lose control. The truck then hit a signpost and left the ground. The defendant said that, as a result of the accident, he suffered a hairline fracture to his back and a head injury. However, he admitted that he was not treated for a fracture at the emergency room, explaining that he had an X-ray of his back showing the fracture but did not have it with him at the trial. The defendant did not recall receiving treatment for acute alcohol intoxication while at the hospital.

The defendant denied having drunk any beer on the day of the accident, saying that the beer cans in his truck were left by "his friend" who had borrowed the truck the day before because his own had overheated. He did not remember telling an officer that he would not take a blood test or that he had drunk a beer on the day of the accident.

John Manners testified that he had borrowed the defendant's truck a few days before the accident because his was "tore up a little bit," and he used the truck to clean up around the lake where he went fishing. He said that he collected two or three six-packs of beer cans at the lake and left them behind the seat in the defendant's truck. He admitted that he usually took a few beers with him to the lake and that he probably left some unopened cans in the defendant's truck. He did not see the defendant drink any beer prior to 7:00 that morning when he left the defendant's residence. Manners said that he and the defendant had replaced the carburetor and shocks on the defendant's truck that week.

After the jury had convicted the defendant of DUI and violation of the seatbelt law, the State recalled Trooper Bumpus who testified, using a certified copy of the defendant's driving record, which had been entered as an exhibit, that in April 1999, the defendant was convicted of DUI in Humphreys County. Accordingly, the jury found the defendant guilty of DUI, second offense.

-3-

# I. Sufficiency of the Evidence

The defendant argues that the evidence at trial was not sufficient to support his conviction for DUI, second offense, because "there were several pieces of evidence that pointed to [the defendant] not being guilty of Driving Under the Influence." Specifically, he asserts that his head injury caused his uncooperative and agitated behavior, and his head injury and back pain caused him to stagger. Additionally, the testimony of John Manners, according to the defendant, explained the presence of beer cans in the defendant's truck and showed that the defendant had not been drinking the morning of the accident.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of violating Tennessee Code Annotated section 55-10-401(a), which provides:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.[1]

In this case, it is undisputed that on the morning of May 22, 2000, the day of the defendant's arrest, the weather was clear and the road dry. The defendant was traveling on a straight stretch of highway when his truck drifted across the oncoming lane of traffic, struck an embankment, went slightly airborne, struck a metal gate, and traveled across a gravel and a grassy area before becoming lodged between two trees. The defendant's truck traveled 125 yards from the road to the point where it stopped. There were no brake or skid marks to indicate that the defendant took any evasive action to prevent the accident.

The evidence further showed that there were several opened and fifteen to twenty unopened beer cans in the defendant's truck after the wreck. According to the State's proof, the defendant told Trooper Bumpus that he had drunk one beer prior to the accident. Trooper Bumpus also testified that he specifically checked the defendant's clothing to determine if the defendant smelled of beer because he had spilled it on his clothing, but there was no indication that the defendant had done so, nor was there any indication that beer had been spilled in the cab of the defendant's truck. Dale Welker also testified that the defendant's clothes were dry and that he "reek[ed] of beer smell." Bumpus specifically smelled alcohol coming from the defendant's breath, not his clothing; the defendant had bloodshot eyes; and his speech was slurred. The defendant was uncooperative, verbally abusive, and combative after the accident. Although the defendant argued that his accident was caused when his truck "grabbed" and that his friend had left the beer cans in his truck, the jury, by its verdict, rejected this explanation, as was its right to do.

This evidence, considered in the light most favorable to the State, was sufficient for a reasonable jury to find the defendant guilty of DUI, second offense, with the certified copy of his driving record sufficient to show that he previously had been convicted of DUI.

---

[1]Effective July 1, 2003, subsection (2) was amended to: "The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more."

## II.    Sentencing

The defendant argues that the trial court erred by sentencing him to more than the minimum sentence because, according to his argument, the court improperly applied enhancement factor (16), the potential for bodily injury to a victim was great, and failed to apply mitigating factor (1), his conduct did not cause or threaten serious bodily injury.  See Tenn. Code Ann. §§ 40-35-114(16), -113(1) (1997).  Further, the defendant argues that the trial court considered the fact that he "supposedly lied on the stand" to enhance his sentence, thereby punishing him for going to trial.  We will review these claims.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302. This court's review of a misdemeanor sentence is *de novo* with a presumption of correctness.  State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).  Although the Sentencing Reform Act typically treats misdemeanors and felonies the same, misdemeanors are not given the presumption of a minimum sentence.  See State v. Seaton, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995).  Our supreme court explained, in Troutman, the procedures for misdemeanor sentencing:

> The sentencing considerations generally used in determining the manner of service for both misdemeanors and felony sentences are codified at Tenn. Code Ann. §§ 40-35-102, -103. See Tenn. Code Ann. § 40-35-102 (noting considerations used in determining whether confinement shall be imposed); Tenn. Code Ann. § 40-35-103 (setting forth considerations to be used when issuing sentencing of confinement).  In addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement.  Compare Tenn. Code Ann. § 40-35-302 ("to consider the purpose of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth herein") with Tenn. Code Ann. § 40-35-201(f) (stating court shall place on record either orally or in writing what enhancement or mitigating factors it found).

979 S.W.2d at 273-74.

Although a separate sentencing hearing is not required in misdemeanor sentencing, the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served."  Tenn. Code Ann. § 40-35-302(a) (1997).  A misdemeanor sentence, unlike a felony sentence, has no sentence range.  State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The mandatory sentence for a DUI, second offense, is a fine between $600 and $3500, confinement for not less than forty-five days nor more than eleven months and twenty-nine days in

the county jail or workhouse, and a two-year loss of driving privileges. Tenn. Code Ann. § 55-10-403(a)(1) (1998). Here, the trial court sentenced the defendant to eleven months, twenty-nine days, with six months to be served in confinement and the balance on probation:

> The Court finds proof that the defendant, in his testimony, was untruthful. He denied any intoxication and so forth. Obviously, this is not the case.
>
> The proof indicates that, although we don't know what his alcohol level was, he was obviously highly intoxicated and engaging in conduct which endangered the public by operating a motor vehicle at a high rate of speed. As he, himself, testified to, he's lucky he's here. And he is also lucky, of course, that someone else wasn't either in the truck with him or on the road at that time.

Additionally, at the hearing on the motion for new trial, the court further explained the basis for the sentence imposed on the defendant:

> As far as the sentence that was excessive, that he is entitled to probation, I presume that he was. Starting out I presume that each defendant is entitled to probation.
>
> In this particular case, [the defendant's] conduct has been described as a typical second offense DUI. [The defendant] was driving alone, left the road, missed the light pole, hit a gate, left the ground, went off the embankment and lodged between two trees. He very obviously was traveling at a high rate of speed. No question in my mind that if anyone else would have been in that area and had been hit by him they would have been seriously injured or killed.
>
> The proof showed though the reason for the court sentencing, that the defendant has – I did first of all find the defendant was untruthful. That in itself is reason enough to deny probation.
>
> He was obviously highly intoxicated. He refused the test. He was far way and above the minimum level of intoxication. And he engaged in conduct over and above just DUI, which is danger to the public. All of these three factors support . . . the Court's determination that the defendant is certainly not entitled to probation and would not get a minimum sentence.

The defendant argues that, in imposing this sentence, the trial court erred by considering the fact that he "supposedly lied on the stand;" in commenting that a person who had gotten in the

defendant's way "would have been seriously injured or killed;" and in not applying, as a mitigating factor, that the defendant's conduct "neither caused nor threatened serious bodily injury."

The defendant was alone in his vehicle, and the record does not reflect that other vehicles or persons were present and thus endangered by the defendant's vehicle. The State's proof, which was accepted by the jury, was that the defendant's vehicle drifted off the roadway, struck an embankment, became slightly airborne, and crossed an area with both gravel and grass, traveling approximately 125 yards after leaving the road. Thus, even if the trial court should have applied, as the defendant argues, the mitigating factor that his conduct "neither caused nor threatened serious bodily injury," this factor would have been entitled to little weight because of the egregious nature of the accident, with others not being threatened simply because others were not present when his vehicle left the road. Further, we cannot conclude that the trial court's comments as to the defendant's having been untruthful amounted to his being punished for going to trial. In fact, the defendant and his witness presented a fairly elaborate explanation at trial as to why he was not guilty of his second DUI charge. The jury disbelieved his explanation, as did the trial court. This court has held that a "defendant's lack of credibility is . . . an appropriate consideration [in whether to grant probation] and reflects on a defendant's potential for rehabilitation." State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Accordingly, we conclude that the sentencing of the defendant was within the discretion allowed to the trial court following a conviction for a misdemeanor.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE